### RILEY v
### SWITZER MUTUAL FIRE INS CO

Ohio Appeals, 7th Dist, Monroe Co

No 269. Decided May 2, 1933

C. E. Timberlake, Bellaire, and Moore, Moore & Moore, Woodsfield, for plaintiff in error.

Matz & Matz, Woodsfield, and F. W. Ketterer, Woodsfield, for defendant in error.

## OPINION

By POLLOCK, J.

Under these facts, the question to be determined in this procedure is "Did the plaintiff in error have a right to recover from the defendant in error, the amount of the insurance on this dwelling house which was destroyed by fire."

The plaintiff in error urges that because the insurance company at the request of the plaintiff· in error, issued what is known as a "loss clause" as set out in the petition, in consideration of the plaintiff in error paying the future assessments, that it constituted an insurance agreement between the parties sufficient to bind the defendant company.

We cannot concede that what the com-

pany did, created an insurance policy. The petition itself recites, that the plaintiff applied to the defendant for insurance on the buildings located on said premises, but plaintiff says that the defendant refused to issue a policy of insurance on said buildings. But what the company did agree to do was to issue what is known as a "loss clause" providing, that any loss or damage under the policy issued to Alfred E. Riley, should be payable to Richard Riley, the mortgagee, as his interest might appear, and subject to all the conditions and limitations of said policy. So that we come to the question in this case: Did the company by its act in issuing such a "loss clause" under the policy issued to Alfred Riley, enter into an agreement which as between the Insurance Company and Richard Riley, that Alfred Riley could not forfeit the policy.

It is urged that because the agreement between the Insurance Company and the plaintiff in error, that if he would pay the future assessments that it, the Insurance Company, would issue and did issue this "loss clause", that they were therefore, agreeing to pay the amount of the insurance on these buildings to Richard Riley, and that the action of Alfred Riley, under this Insurance Policy, would not change that agreement. What the company did agree to do, and the plaintiff in error accepted, was that in consideration of Richard Riley agreeing to pay the future assessments under this policy, it would issue on this policy a "loss clause" as has been stated. That was as far as the agreement made by the Insurance Company went. In other words: The Insurance Company agreed for the consideration above stated, that it would issue a "loss clause" payable to Richard Riley, as his interest might appear, subject to all the conditions of this policy. The company issued such a clause.

Richard Riley under this contract, took the "loss clause" issued by the defendant in error, for whatever it was worth, subject to all the conditions and limitations of the policy.

There is no claim in the petition, but what Alfred Riley, the insured, under the conditions and limitations of the policy, had a right at any time to cancel the policy. Then we come to the question "what rights has the mortgagee who holds a 'loss payable clause' as under the policy?"

In the Annotations 18 L.R.A., N.S., on page 199 it is said:

"If there is no other stipulation in regard to the interest of the mortgagee, the overwhelming weight of authority sustains the proposition that the contract as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, and that the mortgagee is merely an appointee of the fund, and his rights are no greater than those of the assured; and that, therefore, a breach by the latter will avoid the policy as to the mortgagee."

This subject was also referred to by the Supreme Court of the State in the case of Erie Brewing Co. v The Ohio Farmers Insurance Company, found in Vol. 81 Oh St, page 1, in the syllabus as follows:

"A 'mortgage clause' attached to a fire insurance policy at the time the same is executed, which clause makes the loss, if any, under the policy, payable to the mortgagee as his interest may appear, is not an assignment of the policy to such mortgagee, and, in the absence of fraud or collusion, he is bound by the award of appraisers provided for and required by the terms of the policy in the event of a disagreement between the insured and the insurance company as to the amount of the loss, although the mortgagee was not a party to and had no notice of the appraisement and award."

In the opinion on page 21, after referring to a "loss clause," or "mortgage clause" the court says:

"Hence it was not intended to be a new and separate contract between the insurance company and the mortgagee, but to designate or appoint the payee of the amount of loss according to the interest in —not the property insured—but in the insurance which he may make appear."

It follows from what we have stated, that the only agreement that the insurance company made with Richard Riley, the mortgagee, was that, if he would pay the future assessments, it would issue a "loss clause" to him payable as set out in the petition.

That the Insurance Company did this, but that was all the insurance company agreed to do for the mortgagee. It had refused to issue a policy and the mortgagee took this "loss clause" subject to the conditions of the policy, and one of the conditions of the policy was, that the insured had the right to cancel the policy, and when the policy was cancelled, the mortgagee had no right under the policy and

the "loss clause" issued by the company to collect the insurance, caused by this fire.

The judgment of the court below is affirmed. Exceptions noted.

FARR and RICHARDS, JJ, concur.